UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES M. LOVE,

        Plaintiff,

        v.                                             Case No. 24-cv-0200-bhl

SGT. REYNOLDS,
LT. HINTZ,
OFFICER LONGRIDGE,
OFFICER NELSON,
OFFICER SCHMIDT, and
OFFICER ANDRADE,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff James Love, who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Love's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Love has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Love has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $34.33. Love's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Love, on September 4, 2023, he was laying face-down on his cell floor with a mask covering his nose and mouth. Lt. Hintz allegedly tried to talk to Love about his complaints of throwing up blood, but Love did not respond. Love asserts that Hintz left his cell and then returned with a nurse (who is not a Defendant) but Love still refused to respond. Hintz then called Lt. Stone, who allegedly tried to gain Love's compliance, but Love still refused to respond. Dkt. No. 1 at 2-3.

Love explains that Hintz then called for a "suit up" team consisting of Officer Longridge, Officer Nelson, Officer Schmidt, and Officer Andrade to extract Love from his cell. Love asserts that Hintz informed Love that the team was going to enter his cell and he should not move. He also informed Love that he had his taser out, and if Love moved, he would be tasered. Love states that he complied with Hintz's orders and placed his hands behind his back. According to Love, the officers entered his cell, and Longridge secured Love's hands behind his back. Love asserts that Reynolds then struck him several times around his eye and lower jaw, yelling at Love to stop resisting and to stop trying to bite him. According to Love, Hintz, Longridge, Andrade, and Nelson did not intervene to stop Reynolds from striking him. Love asserts that Hintz removed his mask, and Love stated he was not resisting or trying to bite anyone. Love was examined by a nurse who provided him with Tums to address his throwing up and an ice bag for the bruising and swelling on his face. Dkt. No. 1 at 3-4.

# THE COURT'S ANALYSIS

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The "core judicial inquiry" when evaluating an officer's use of force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6 (citing *Whitley*, 475 U.S. at 320–21). Love states an excessive force claim against Reynolds based on allegations that he repeatedly struck Love in the face even though Love was restrained face down on the ground and not resisting. Whether Love states a claim against Hintz, Longridge, Nelson, Schmidt, and Andrade for failing to intervene to stop Reynold's use of force is a closer call. Love suggests that they did not intervene because Reynolds was yelling at Love to stop resisting and to stop trying to bite him. The Court believes that further development of the record is necessary to determine whether these officers reasonably relied on Reynold's statements regarding Love's resistance or whether they knew, despite Reynolds' statements, that Love was not resisting and that the force Reynolds' allegedly used was therefore excessive.[1]

Finally, on February 26, 2024, Love filed a motion to appoint counsel. He asserts that he has a learning disability and does not know the law. He provides the names of two lawyers who he asked to represent him. According to Love, neither responded to his letters. Dkt. No. 6.

In exercising its discretion on whether to recruit volunteer counsel, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been

---

[1] Love alleges that Schmidt was part of the extraction team, but when listing the officers who allegedly failed to intervene, Love omitted Schmidt's name from the list. This appears to have been an error as Love names Schmidt as a Defendant in the complaint's caption. Given that Schmidt was part of the team that entered Love's cell and given the Court's obligation to construe *pro se* allegations broadly, the Court will, for the time being, allow Love to proceed on a failure-to-intervene claim against Schmidt.

effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). Even though Love has made a reasonable attempt to locate a lawyer without the Court's help, the Court will deny his motion because, at this stage, he appears competent to litigate his claims on his own.

In evaluating a plaintiff's competency to represent himself, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491.

Love's claims are straightforward and fact-specific, which means they will largely turn on the parties' memories of what happened. Further, Love's complaint was clear, organized, and easy to understand, demonstrating he has a good recollection of what happened and is able to effectively communicate with the Court. Love asserts that he has limited legal knowledge, but that is true for nearly all *pro se* prisoners and is not a sufficient basis for the Court to recruit a volunteer lawyer. The legal framework for his excessive force claim is explained in this order, and the Court is satisfied that he has the capacity to use discovery to obtain relevant information, including his medical records and the Defendants' incident reports.

After Defendants have an opportunity to respond to the complaint and after the Court enters a scheduling order setting deadlines for discovery and the filing of dispositive motions, Love may ask each Defendant up to twenty-five written questions (called interrogatories in the Federal Rules) and he may ask for documents (such as incident reports) that they have in their possession. *See*

5

Fed. R. Civ. P. 33 and 34; Civil L. R. 33. As a reminder, Defendants may object to a discovery request to the extent they believe the request is improper. If Love does not agree with an objection, he should try to informally resolve the dispute with Defendants' lawyer. Most parties are able to resolve discovery disputes without the Court's involvement. If he and Defendants' lawyer are unable to resolve the dispute on their own, he may file a motion asking the Court to get involved. If Love asks the Court to get involved in a discovery dispute, he must describe the dispute in detail and explain what efforts the parties made to resolve the dispute before involving the Court.

Because the Court concludes that Love can participate in discovery on his own, the Court will not recruit a lawyer to represent him at this stage of the case. If new challenges arise, Love may renew his motion, but he must explain in detail what challenges he is facing and what efforts he has made to overcome them on his own.

**IT IS THEREFORE ORDERED** that Love's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Love's motion to appoint counsel (Dkt. No. 6) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Love's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Sgt. Reynolds, Lt. Hintz, Officer Longridge, Officer Nelson, Officer Schmidt, and Officer Andrade.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendant shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Love is located.

**IT IS FURTHER ORDERED** that the agency having custody of Love shall collect from his institution trust account the $315.67 balance of the filing fee by collecting monthly payments from Love's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Love is transferred to another institution, the transferring institution shall forward a copy of this Order along with Love's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Love is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Love may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on March 14, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge