UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES M. LOVE,

        Plaintiff,

       v.                                        Case No. 24-cv-0200-bhl

RODNEY REYNOLDS et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff James Love, an inmate at the Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth Amendment claims based on allegations that Defendant Rodney Reynolds punched him in the face during a cell extraction and that Defendants Joshua Langridge, Anthony Nelson, Jason Schmidt, and Isaiah Andrade failed to intervene in Reynold's alleged use of excessive force. On January 30, 2025, Defendants moved for summary judgment. For the reasons explained below, the Court will grant the motion and dismiss this case.

## PROCEDURAL ISSUES

Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle it to judgment as a matter of law. Civil L. R. 56(b)(1). Per the rules, the statement of proposed facts should consist of numbered paragraphs containing short factual statements with specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L. R. 56(b)(1)(C). On January 30, 2025, Defendants submitted

proposed findings of fact in support of their summary judgment motion in compliance with the local rules. *See* Dkt. No. 25.

The rules require a party opposing a summary judgment motion to file a response to the moving party's proposed facts to make clear to the Court which, if any, of the proposed facts are in dispute. The opposing party must respond to each paragraph. Civil L. R. 56(b)(2)(B). Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment. Civil L. R. 56(b)(4).

Defendants, as required by the local rules, reproduced Fed. R. Civ. P. 56, Civil L. R. 7, and Civil L. R. 56 in their motion for summary judgment. *See* Dkt. No. 23. Moreover, the day after Defendants moved for summary judgment, the Court entered a notice and order informing Love that he was required to "respond to each of the proposed findings of fact by agreeing with each proposed fact or explaining why he disagrees with a particular proposed fact." Dkt. No. 33. The Court also clarified that "Love does not satisfy his obligations by simply filing a declaration with his version of the facts. Civil L. R. 56(b)(2)(B) requires Love to respond to *each* proposed fact." *Id.* The Court warned Love that if he "does not respond to a proposed fact, the Court will assume that Love does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." *Id.*

On February 14, 2025, Love filed a document that he captioned "Plaintiff Response to Defendants Motion for Summary Judgment." Dkt. No. 43. The document is a declaration with fifteen paragraphs containing Love's general denials of Defendants' version of what happened and unsupported accusations that Defendants tampered with evidence. *See, e.g., id.* at ¶2 ("Love disagree with all parties statements made in their declaration."); *id.* at ¶14 ("Love would be sending his evidence on behalf of his claim that staff tampered with evidence . . ."). About two weeks

2

Case 2:24-cv-00200-BHL    Filed 03/31/25    Page 2 of 9    Document 50

later, on February 28, 2025, Love filed a document he captioned "Plaintiff Response to Defendants Findings of Facts." Dkt. No. 44. Contrary to the caption, Love did not respond to each of Defendants' 107 proposed findings of fact, *see* Dkt. No. 25; instead, he filed another declaration with twenty-seven paragraphs of general denials about his actions during the cell extraction, assertions of what he believes video evidence shows, and unsupported accusations of evidence tampering.

Also on February 28, 2025, Defendants filed a reply in support of their motion for summary judgment. Dkt. No. 45. Defendants highlight, in part, that, in contravention of the Local Rules and the Court's order, Love did not properly respond to Defendants' proposed findings of fact, nor did he file a responsive legal brief. Defendants also emphasize that, even if the Court were to construe Love's filings liberally, Love claims only that he did not resist staff's efforts during the cell extraction and that he has several photographs (that he did not provide) showing he had a black eye. At no point does Love state in his declarations that Reynold's punched him, nor does he provide any substantive evidence contradicting Defendants' assertions. *Id.* at 3-4. About a week later, on March 7, 2025, Love filed four documents addressing the arguments Defendants raised in their reply brief. Dkt. Nos. 46-49.

The Defendants included the relevant rules in their motion and the Court also highlighted key requirements while explicitly warning Love of the consequence of his failure to strictly comply with the local rules. Love cannot avoid the consequences of his failure to comply with the local rules simply by highlighting his unfamiliarity with the law and his limited education. Although Love filed declarations with general denials and arguments in response to Defendants' motion for summary judgment, he did not respond to *each* of Defendants' proposed facts as he was repeatedly instructed to do. Accordingly, as Love was warned, Defendants' proposed facts are deemed

3

admitted for the purpose of deciding summary judgment. *See Phoneprasith v. Greff*, Case No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L. R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same).

Further, the Court will not consider the filings Love submitted in response to Defendants' reply brief because Civil L. R. 56 does not allow non-moving parties to file sur-replies. Defendants do not raise new arguments in their reply, so there is no good cause for allowing Love to address arguments in a sur-reply that he could have addressed in his response materials.

With these considerations in mind, the Court turns to the substance of Defendants' summary judgment motion.

## BACKGROUND

At the relevant time, Love was incarcerated at the Waupun Correctional Institution, where Ryan Hintz worked as a lieutenant, Rodney Reynolds and Anthony Nelson worked as correctional sergeants, and Isaiah Andrade, Joshua Langridge, and Jason Schmidt worked as correctional officers. At the time of the incident, Love was housed in the restrictive housing unit, which houses inmates who typically present a high security risk. Dkt. No. 25 at ¶¶1-7.

At about 10:15 a.m. on the morning of September 4, 2023, Nelson informed Hintz that Love had covered his cell window and was not responding to staff. After Hintz arrived at Love's cell, paper was removed from his window and Hintz tried to get Love to respond to him and come to his door. Love refused to respond. Hintz noticed that Love had slipped a note through his door, in which he complained he was upset about wanting to see a nurse. Hintz called a nurse to come speak to Love, but Love continued to refuse to respond. Hintz then contacted another lieutenant to come talk to Love, but he also refused to talk to her. Following Love's repeated refusals to

4

respond, Hintz was given permission to assemble a cell extraction team and to use a taser, if necessary. Dkt. No. 25 at ¶¶16-26.

The cell extraction team included Langridge as Pad 1, Reynolds as Pad 2, Schmidt as team leader, Andrade on restraints, and Nelson as camera operator. Cell extractions are necessarily dangerous because they involve an inmate who refuses to voluntarily comply with orders. They are generally used as a last resort. The cell extraction team approached Love's cell front and gave Love orders to come to his door so he could be restrained. Love continued to be silent in response. Hintz informed Love that the team would be entering his cell, and he should not make any sudden movements. The team then stacked up, entered Love's cell, and told him to get on the ground. When the team entered, Love was on a rough, concrete platform, crouched behind his mattress and covered with a sheet or blanket. Langridge asserts that, once he pulled the mattress and sheet away, Love tried to jump up from the concrete platform he was on, but Langridge used his pad and body weight to secure Love to the platform. Reynolds then secured Love's head using a diamond shape formation around Love's ear, which allows an officer to stabilize and maintain control of an inmate's head while also allowing the inmate to hear officers' orders. Love was tensing up his body and jerking around, which prompted directives from the officers that Love stop resisting. Reynolds asserts that at no time during the extraction did he hit, strike, or punch Love in the face. Dkt. No. 25 at ¶¶14; 27-37; 44-53; 61-67; 78-87.

Hintz entered the cell shortly after the team, by which time Love was laying on his stomach. Love had a shirt wrapped around his head, so Reynolds removed the shirt while stating, stop trying to bite me. Love denies that he tried to bite Reynolds. Reynolds then resecured Love's head by repeating the diamond formation around his ear, and Schmidt removed a sock that was tied around Love's neck. Andrade secured Love with restraints and handcuffs without further incident and

5

Love was escorted to an examination room for medical assessment. Dkt. No. 25 at ¶¶33-37; 54-57; 68-74; 88-92.

During the medical assessment, Love asked who punched him in the face. Hintz observed a reddish mark on Love's face. Love refused to allow the nurse to assess the mark, but Hintz ordered that pictures be taken of the mark. Love was then escorted back to his cell, and his restraints were removed. Dkt. No. 25 at ¶¶38-43.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "But not every malevolent touch by a security officer implicates the Constitution." *Id.* When evaluating force used by a state official against an inmate, the "core judicial inquiry" is whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7.

Based on the proposed findings of fact submitted by Defendants and deemed true as a result of Love's failure to respond, no jury could reasonably conclude that Defendants used force maliciously and sadistically to cause harm to Love. It is undisputed that Love was given numerous opportunities to comply with orders to show himself in his cell and respond to officers. When he refused to do so, he was informed a cell extraction team would enter his cell if he did not comply. He still did not comply. Instead, he concealed himself behind a mattress and wrapped himself in a blanket. As Defendants explain, this was a dangerous situation because Love's state of mind was unclear—he could have had intentions to harm himself or officers.

For both their safety and the safety of Love, Defendants needed to be prepared for the worst-case scenario. Accordingly, Defendants entered Love's cell swiftly, removed the mattress and blanket, and forcibly restrained Love on the ground. Langridge explains that he used the pad and his body weight to secure Love face-down on a rough concrete slab, and Reynolds explains that he used a diamond formation to secure Love's head against the ground. Importantly, Love's head was wrapped in a t-shirt during these initial interactions, so while he certainly felt force being applied to his head, he would have been unable to see the manner in which that force was applied. After Love was initially secured by Langridge and Reynolds, Reynolds removed the t-shirt from

7

Case 2:24-cv-00200-BHL   Filed 03/31/25   Page 7 of 9   Document 50

Love's face. Reynolds asserts that he only ever used a diamond formation to secure Love's head; at no time did he or anyone else punch, hit, or strike Love in the face. Based on these facts,[1] the only conclusion a jury could reasonably reach is that Defendants applied force in a good faith effort to restore discipline. Defendants are therefore entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 23) is **GRANTED** and this action is **DISMISSED**. The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 31, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

[1] Defendants also filed a video in support of their motion. But video evidence "can eviscerate a factual dispute only when the video is so definitive that there could be no reasonable disagreement about what the video depicts." *Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023). The video submitted by Defendants is largely consistent with their version of what happened, but as Love points out, it does not capture the initial moments of the team's entry into Love's cell, nor is Love visible under the Defendants as they struggle to secure him, so the video does not provide irrefutable evidence of Defendants' version of the facts.

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.